UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

BENITO CRUZ RAMIREZ,

    Petitioner,

v.                                                 No. 6:23-CV-00003-H

DIRECTOR, TDCJ-CID,

    Respondent.

**OPINION AND ORDER**

Petitioner Benito Cruz Ramirez, a self-represented state prisoner, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction and enhanced 60-year sentence out of Concho County for first degree possession of a controlled substance with intent to deliver. Dkt. No. 1. Respondent filed an answer with copies of Petitioner's relevant state-court records. Dkt. Nos. 11, 12. Petitioner replied. Dkt. No. 16. As explained below, the Court finds that Petitioner has failed to overcome the difficult, deferential standard of 28 U.S.C. § 2254(d). Thus, the petition must be denied and dismissed with prejudice.

**1.    Background**

Petitioner challenges his state-court conviction and prison sentence out of the 119th District Court of Concho County, Texas. In cause number DSM-18-020211, styled *State of Texas v. Benito Cruz Ramirez*, Petitioner was charged by indictment with delivering more than 4 grams but less than 200 grams of methamphetamine. Dkt. No. 11-1 at 63. The enhancement paragraph alleged Petitioner had a prior felony conviction. *Id*. Petitioner pled not guilty, but a jury found him guilty, found the enhancement paragraph to be true, and

sentenced him to 60 years in prison. *Id.* at 64, 69. The trial court rendered judgment on May 1, 2019. *Id.*

### A. Facts

Respondent provided the state appellate court's detailed summary of the facts of this case, and the Court finds it unnecessary to fully repeat it here. *See* Dkt. No. 11 at 5-6. But the Court finds a shortened summary would be helpful for the purpose of this order. Petitioner sold 16.84 grams of methamphetamine to an undercover officer. The officer contacted the Concho County Sheriff Chad Miller to turn over the evidence to him. He placed the bag containing the substance in a Ziploc bag and wrote information on it identifying Petitioner and describing the transaction. Concho County received the Ziploc bag, field tested it and placed it in official sealed evidence bag in the county's evidence locker and sent it for testing the next day. The bag upon which the information was written by the undercover officer was discarded.

Petitioner was charged with possession of more than four grams but less than 200 grams of methamphetamine and in November 2018, the case was assigned a trial date of April 29, 2019. He was appointed counsel, but his original attorney had to be replaced because he was not qualified to represent individuals charged with first degree felonies, and the trial court appointed Todd Simons to represent him instead. The two met in February 2019 but had difficulty communicating afterward—apparently because Petitioner gave Simons the wrong phone number. On April 12, 2019, Petitioner gave Simons another phone number, but because Simons was preparing for another trial, he asked Petitioner to call him on April 15 so that they could review the evidence. Petitioner did not do so, and on April 16, Simons called Petitioner who told Simons that he was being replaced by retained counsel. As a result, Simons filed a motion to continue trial and withdraw.

The motions were filed and heard on April 22nd, and although Petitioner was told of the upcoming hearing by Simons, Petitioner opted to work and did not attend the hearing. At the hearing, Simons explained to the trial court the difficulties with communicating with Petitioner, his unpreparedness for trial as a result of those difficulties, and that he had been contacted by several different attorneys about the cause. The trial court denied the motions, observed that the case was not complex, and noted that it was Petitioner who placed defense counsel in the situation he was in. The trial court left open the possibility of permitting counsel to withdraw if Petitioner actually hired another attorney.

Then, at another pretrial hearing on April 29, Petitioner attended with Simons and a prospective retained attorney—who had with him a motion to substitute and to continue the trial date. But the motion to substitute was conditioned on securing a continuance. After hearing arguments from counsel, the trial court expressed frustration regarding the age of the case and Petitioner's belated attempt to retain counsel and denied the continuance. The trial began on April 30 with Simons representing Petitioner.

**B.    Procedural History**

Petitioner appealed, but the Seventh Court of Appeals affirmed his conviction. Dkt. No. 11-1 at 54–57; *Ramirez v. State*, No. 07-19-0208-CR, 2020 WL 3459366 (Tex. App. June 23, 2020). Petitioner sought discretionary review, but the Texas Court of Criminal Appeals (TCCA) refused the petition. *See id.*

Petitioner then filed a state habeas application, raising the same three ineffective assistance of counsel grounds raised in the instant federal petition. Specifically, Petitioner claimed following three grounds for relief:

1. He was denied effective assistance of counsel when his attorney failed to adequately investigate the case against Petitioner and prepare for trial.

2. He was denied effective assistance of counsel when his attorney failed to file pretrial motions, including a motion to suppress all of the prosecution's evidence, and a motion in limine challenging the chain of custody of the methamphetamine in question.

3. He was denied effective assistance of counsel when his attorney failed to file a motion requesting appointment of a defense chemist to examine the methamphetamine in question.

*See* Dkt. No. 11-1 at 72–90, 93–117.

The trial court issued an order designating controverted facts, which instructed trial counsel Simons to respond to Petitioner's assertions of ineffective assistance. *Id.* at 118. Simons filed his response. *Id.* at 119–21.

In his response, Simons contends that, as to Petitioner's first ground, it was Petitioner's refusal to confer with him that handicapped the defense at trial. Simons described the meetings he had with Petitioner, the scheduled meetings that Petitioner did not show up for, and his repeated attempts to contact Petitioner—but the telephone number that Petitioner had given him went straight to voice mail with a full message box, and Petitioner never called him back. Simons notes that at one point, Petitioner informed him that he was hiring another attorney. Simons continued to work on the case, negotiating a 15-year plea offer, but he was unable to reach Petitioner. So, he mailed the new plea offer to Petitioner at his last known address. After Petitioner missed another meeting on April 26, Simons drafted and filed a motion to withdraw and motion for continuance. At the hearing on the motions on April 29, Petitioner arrived with another attorney who planned to substitute in if the trial, which was scheduled to begin April 30, was continued. But the Court denied the motion to withdraw and for continuance, Petitioner refused the latest plea offer, and he and Simons had their first meeting to discuss the evidence the day before trial began. Simons contends that he did not announce ready for trial, but the trial proceeded

4

anyway, and Petitioner never furnished him with any evidence to contradict the prosecution's evidence. *See* Dkt. No. 11-1 at 119–20.

As to Petitioner's grounds regarding his failure to file certain motions, Simons explained his strategic reasons for not filing a motion to suppress or a motion in limine, such as (1) he did not believe the prosecution's evidence was properly subject to a motion to suppress, (2) if he filed a motion to suppress, it would require a hearing that he could not be certain Petitioner would attend—and if Petitioner failed to appear at an evidentiary hearing, Simons believed he could have additional charges filed against him; (3) Simons also believed Petitioner should accept the plea bargain offered, and that the State was more likely to keep the offer on the table if he did not file a motion to suppress; (4) and he believed that filing a motion to suppress could alert the prosecution to arguments the defense planned to make before the jury—which were unlikely to be persuasive in front of the judge, but which could prove beneficial when addressed to the jury. *See id.* at 120.

Finally, as to Petitioner's ground that he was ineffective for failing to engage an expert chemist, Simons asserted that (1) he had thoroughly investigated the case and found no information suggesting that an expert chemist would have been helpful to the defense; (2) he chose to challenge the drug evidence through cross-examination; (3) he investigated the qualifications, background, and experience of the prosecution's expert witness; and (4) he believed that any of the mistakes on his part or by the state trial court during trial had no impact on the outcome of either phase of trial. *See id.* at 120–21.

The trial court entered findings of fact and conclusions of law recommending denial of Petitioner's state habeas application. *Id.* at 122–27. Notably, the trial court concluded that (1) the Court of Appeals held that the trial court had not abused its discretion in denying Petitioner's motion for continuance and for leave to withdraw; (2) any lack of trial preparation on the part of attorney Simons was due to Petitioner's refusal to communicate

and meet with Simons despite being out on bond; (3) Petitioner could not complain about his own failure to participate in his own defense; (4) Petitioner had failed to identify any legitimate basis to support a motion to suppress or identify any evidence that was properly subject to a motion in limine; (5) the Court of Appeals addressed and rejected on the merits Petitioner's complaints about admission of the methamphetamine; (6) Petitioner offered no factual support for his suggestion that a defense chemist could have assisted the defense in attacking the prosecution's case; (7) Petitioner alleged no facts to challenge the accuracy of the crime lab's report regarding the methamphetamine relevant to his trial; (8) Petitioner's claims of ineffective assistance were vague, conclusory, and undeveloped assertions; and (9) Petitioner failed to establish that the defense would have benefitted from appointment of a defense expert chemist. *See id.* at 122–27.

On December 7, 2022, the TCCA denied the application without written order based on the trial court's findings without a hearing and upon the TCCA's own independent review of the record. *Id.* at 130.

Petitioner timely filed his federal petition on January 10, 2023, in which he raised the same three grounds as those raised in his state habeas application, as described above. Dkt. Nos. 1, 2.

In short, Petitioner primarily bases his ineffective-assistance grounds on what he characterizes as trial counsel's alleged failure to confer with him to prepare for trial, which led to counsel not having a theory of the case and a failure to file appropriate pretrial motions or seek the assistance of a chemist to examine the evidence used against him. He asserts that trial counsel failed to confer with him because he was calling the wrong number, and points to trial counsel's admission in a hearing on his motion to withdraw that he "believes he cannot effectively assist Petitioner in the trial because he has not received the evidence" and because Petitioner "has not maintained contact." *See* Dkt. No. 1 at 6.

Respondent contends that Petitioner's claims are all without merit and fail to overcome the deferential standard imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* Dkt. No. 11. Respondent argues that the TCCA reasonably concluded that Petitioner's attorney was not ineffective, because Petitioner has not shown deficient performance or prejudice under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, Respondent asserts that the petition should be dismissed with prejudice.

In reply, Petitioner reasserts each of his claims and argues that he has shown that counsel was unprofessional, that his representation fell below an objective standard of reasonableness, and that there is a reasonable probability that the results of the proceeding would have been different but for counsel's unprofessional errors. *See* Dkt. No. 16. Notably, Petitioner does not acknowledge or refute his part in counsel's alleged unpreparedness by failing to provide counsel with a good phone number, to call counsel, to appear at various hearings and meetings, or by notifying Simons that he was being replaced by retained counsel.

2.  **Legal Standard**

Section 2254 provides federal courts with a limited, but important opportunity to review a state prisoner's conviction and sentence. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011). This statute, as amended by AEDPA, creates a "highly deferential standard for evaluating state-court rulings, . . . which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam) (internal quotation marks omitted).

The basic structure of the federal habeas statute is "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Richter*, 562 U.S. at 103. First, the statute requires that a habeas petitioner exhaust his

claims in state court. 28 U.S.C. § 2254(b). If the state court dismisses the claim on procedural grounds, then the claim is barred from federal review unless the petitioner shows cause and prejudice. *Richter*, 562 U.S. at 103. And if the state court denies the claim on the merits, then AEDPA's relitigation bar applies. *Lucio v. Lumpkin*, 987 F.3d 451, 464–65 (5th Cir. 2021).

### A.    AEDPA's Relitigation Bar

Once a state court has rejected a claim on the merits, a federal court may grant relief on that claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A state-court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby*, 359 F.3d at 713. A decision constitutes an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (explaining that a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

8

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Federal habeas relief is precluded even when the state court's factual determination is debatable. *Id.* at 303. State-court factual determinations are entitled to a "presumption of correctness" that a petitioner may rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This "deference extends not only to express findings of fact, but to the implicit findings of the state court." *Ford v. Davis*, 910 F.3d 232, 234–35 (5th Cir. 2018).

State courts need not provide reasons for their decisions, and even summary denials of relief are entitled to substantial deference. *Richter*, 562 U.S. at 100–01. Of course, when the state high court "explains its decision on the merits in a reasoned opinion," then the federal court's review is straightforward—it "simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). But when reviewing a summary denial, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id.* If the lower court's rationale is reasonable, the federal court must "presume that the unexplained decision adopted the same reasoning." *Id.* This presumption may be rebutted, however, by evidence that the summary decision "relied or most likely did rely on different grounds." *Id.* at 125–26. And when the lower state court decision is unreasonable, then it is more likely that the state high court's single-word decision rests on alternative grounds. *Id.* at 132.

In short, a reviewing court cannot "overlook[] arguments that would otherwise justify the state court's result." *Richter*, 562 U.S. at 102. A federal habeas court "must determine what arguments or theories supported, or . . . could have supported, the state

9

court's decision" before considering "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent" with Supreme Court precedent. *Id.* "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Moreover, "federal habeas relief does not lie for errors of state law," and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991); *West v. Johnson,* 92 F.3d 1385, 1404 (5th Cir. 1996). AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002). Federal habeas review is reserved only as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Richter,* 562 U.S. at 102–03. This standard is intentionally "difficult to meet." *Id.*

Finally, federal habeas review is limited "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster,* 563 U.S. 170, 181–82 (2011). In short, to overcome AEDPA's highly deferential, difficult standard, a petitioner "must show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny . . . relief was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans v. Davis,* 875 F.3d 210, 217 (5th Cir. 2017).

### B. Ineffective Assistance of Counsel

The well-known standard applicable to ineffective-assistance-of-counsel claims is explained in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Under the two-pronged *Strickland* test, a petitioner must show that counsel's performance was both deficient and prejudicial. *Id.* at 687. An attorney's performance was deficient if the attorney made errors so serious that the attorney was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. *Id.* That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession.

A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689. A strong presumption exists "that trial counsel rendered adequate assistance and that the challenged conduct was reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*, 466 U.S. at 694).

Additionally, a petitioner must show that counsel's deficient performance prejudiced the defense. To establish this prong, a petitioner must show that counsel's errors were so serious as to deprive petitioner of a fair trial. *Strickland*, 466 U.S. at 687. Specifically, to prove prejudice, a petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). This is a heavy burden that requires a "substantial," and not just a

"conceivable," likelihood of a different result. *Richter*, 562 U.S. at 112; *see also Pinholster*, 563 U.S. at 189.

In the context of § 2254(d), the deferential standard that must be given to counsel's representation must also be considered in tandem with the deference that must be accorded state-court decisions, which has been called "doubly" deferential. *Richter*, 562 U.S. at 105. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Additionally, if a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Strickland*, 466 U.S. at 697.

3.  Analysis

The Court thoroughly examined Petitioner's pleadings, Respondent's answer, the relevant state court records, and the applicable law. The Court finds that an evidentiary hearing is not necessary to resolve the instant petition. *See Young v. Herring*, 938 F.2d 543, 560 n.12 (5th Cir. 1991) ("[A] petitioner need not receive an evidentiary hearing if it would not develop material facts relevant to the constitutionality of his conviction."). As explained below and based on the facts and law set forth in Respondent's answer, the Court denies Petitioner's claims because he has not overcome AEDPA's relitigation bar.

Petitioner raised each of his claims in his state habeas proceedings, and the TCCA considered and rejected them on the merits.[1] The TCCA's denial is entitled to substantial deference. *Richter*, 562 U.S. at 100–01. And as thoroughly explained by Respondent,

---

[1] Under Texas law, denial of a habeas petition, rather than a dismissal, signifies that the state habeas court's adjudication of claims was on the merits. *See Salazar v. Dretke*, 419 F.3d 384, 398–99 (5th Cir. 2005).

Petitioner has not met the demanding standard for overcoming that deference.[2] The record does not reflect that Petitioner's attorney's performance was deficient or that Petitioner was prejudiced as a result. This is especially so in light of Petitioner's own strategic choices concerning his representation—including repeatedly failing to meet and work with his attorney and to provide necessary information to his attorney. *See e.g., Sonnier v. Quarterman*, 476 F.3d 349, 362 (5th Cir. 2007) (holding that a criminal defendant cannot block his attorney's efforts and later claim that the resulting performance was constitutionally deficient).[3] Thus, the state court reasonably concluded that Petitioner failed to demonstrate that he received ineffective assistance of counsel. Simply put, Petitioner has failed to show that the state court's ruling on his claims was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. *See id.* at 102.

In sum, Petitioner has failed to show that the state-court's adjudication of his claims resulted in a decision contrary to clearly established federal law or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings. 28 U.S.C. § 2254(d). Thus, he is not entitled to federal habeas relief.

---

[2] Respondent has adequately addressed each of Petitioner's grounds, and the Court need not repeat its arguments. *See* Dkt. No. 15, 8-33.

[3] The state habeas court noted that "[t]he client, especially when he is not in custody, has a responsibility to keep appointments with his attorney, to appear in court for hearings, and to generally participate in his own defense and when a client fails to do these things he cannot complaint that his attorney was ineffective." Dkt. No. 11-1 at 125.

### 4. Conclusion

For the reasons discussed above and based on the facts and law set forth in Respondent's answer, the Court denies the petition and dismisses this civil action with prejudice.

Additionally, pursuant to Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c), Petitioner has failed to show that reasonable jurists would (1) find this Court's "assessment of the constitutional claims debatable or wrong," or (2) find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As a result, the Court denies any request for a certificate of appealability.

So ordered.

The Court will enter judgment accordingly.

Dated October 28, 2025.

JAMES WESLEY HENDRIX
United States District Judge